**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRYSTINA AMELOTTI : <br> 531 Swarthmore Ave. : <br> Folsom PA 19033 : <br> : <br>      Plaintiff, : <br>   v. : <br> : <br> DREXEL UNIVERSITY : <br> o/a Department of Public Safety : <br> 3201 Arch Street, Suite 430 : <br> Philadelphia, PA 19104 : <br>     and : <br> CHIEF EILEEN BEHR : <br> c/o Drexel University : <br> Department of Public Safety : <br> 3201 Arch Street, Suite 430 : <br> Philadelphia, PA 19104 : <br>     and : <br> CAPTAIN PATRICK HANEY : <br> c/o Drexel University : <br> Department of Public Safety : <br> 3201 Arch Street, Suite 430 : <br> Philadelphia, PA 19104 : <br> : <br>     Defendants. : <br>                         : | CIVIL ACTION <br><br> No.: <br><br> **JURY TRIAL DEMANDED** |

## <u>CIVIL ACTION COMPLAINT</u>

Plaintiff, Chrystina Amelotti (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I.   <u>Introduction</u>

1.    Plaintiff has initiated this action to redress violations by Drexel University, Chief Eileen Behr, and Captain Patrick Haney (hereinafter collectively referred to as "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq.*)/the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101

*et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), the Philadelphia Fair Practices Ordinance ("PFPO"), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff was subjected to discrimination and retaliation and she has suffered damages more fully described/sought herein.

## II.   Jurisdiction and Venue

2.      This Court may properly maintain jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co v. State of Washington, 326 U.S. 310 (1945) and its progeny.

3.      This action is initiated pursuant to a federal law.  The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

4.      There lies supplemental jurisdiction over Plaintiff's state/local law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

5.      Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year from the date of dual-filing with the EEOC before she can plead her claims arising under the PHRA, unless the PHRA issues a case closure notice prior to one year (which it has not as of the filing of this lawsuit). Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the Title VII/PDA and ADA. Plaintiff's PHRA claims however will mirror her federal claims under Title VII/PDA and the ADA.

### III.    Parties

6.    The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7.    Plaintiff is an adult who resides at the above-captioned address.

8.    Defendant Drexel University (hereinafter "Defendant University") is a private research university with its main campus in Philadelphia, Pennsylvania.

9.    Defendant Chief Eileen Behr (hereinafter "Defendant Behr") was the former Chief of Police and Vice President of Defendant Drexel's Public Safety Department during all relevant times herein.

10.    Defendant Captain Patrick Haney (hereinafter "Defendant Haney") was (during all relevant times herein) and still is the Captain of the Police Department (a branch of Defendant Drexel's Public Safety Department).

11.    At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

### IV.    Factual Background

12.    The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

13.    Plaintiff was hired by Defendant University in or about January of 2013.

14.    Plaintiff was initially hired by Defendant University as a University Police Officer.

15.    Throughout her employment with Defendant University, Plaintiff was a stellar employee, who worked her way up the ranks after her hire in January of 2013.

16.     For example, based on her strong work ethic and performance, Plaintiff was promoted to Sergeant in or about the Summer of 2019 and remained in that role until returning from medical leave in or about May of 2022 (discussed further *infra*).

17.     In or about February of 2019, Plaintiff was pregnant with her first child and was required to commence a medical leave of absence due to complications connected with her pregnancy.

18.     Specifically, Plaintiff was diagnosed with Hyperemesis Gravidarum – a disorder that only affects approximately 2% of pregnant women in the United States. The side effects of this disorder are extreme nausea and vomiting – which can lead to other complications and medical concerns.

19.     Plaintiff was prescribed medication for her aforesaid diagnosis, which unfortunately did not absolve her symptoms and she ultimately made almost a dozen visits to the Emergency Room ("ER") during her first pregnancy (in connection with her pregnancy and related medical conditions).

20.     As a result of the foregoing diagnosis and side effects, Plaintiff developed the following additional medical conditions during her first pregnancy:

> i.   Ketone in her urine, which is a condition that can cause a person's blood to become acidic;
> ii.  Kidney stones;
> iii. Anemia and low hemoglobin (which required her to have 8 iron infusions during her pregnancy); and
> iv.  Constant nose bleeds.

21.     Plaintiff's aforesaid condition became so severe during her first pregnancy that her doctor scheduled a home nurse to give her an IV with fluids and vitamins in order to keep her hydrated and decrease her symptoms (in hopes of preventing her from going to the ER).

However, even with this treatment plan, Plaintiff was still required to go to the ER on several occasions for dehydration.

22.     As a result of the foregoing, Plaintiff remained on disability leave (Short Term Disability and then Long Term Disability) until in or about August of 2019 when she returned to work.

23.     While on Short Term and Long Term Disability for her first pregnancy, Plaintiff's leave was monitored and approved by a former employee of Defendant University's Human Resources ("HR") Department. Upon her return to work, Plaintiff was reinstated with ***full seniority*** and without any issues.

24.     On or about July 25, 2021, Plaintiff was pregnant with her second child and was required to take another medical leave of absence because she was again diagnosed with Hyperemesis Gravidarum.

25.     As a result of her diagnosis, Plaintiff's physician required a home nurse to visit her three (3) times a week to give her fluids, vitamins and Promethazine through an IV line.

26.     Even with the aforesaid medical treatment plan, Plaintiff continued to suffer from dehydration and weight loss to the point that her doctor prescribed additional treatment in the form of a subdue Zofran pump.

27.     Despite the aforesaid medical treatments, Plaintiff still had approximately eight (8) ER visits during her second pregnancy and also experienced fainting spells, nose bleeds, anemia, low hemoglobin, constant UTI infections, and vitamin deficiencies.

28.     While out of work during her second pregnancy, Plaintiff contacted Jacob Bononcini (hereinafter "Bononcini"), Sr. Consultant, Leave & Disability Resources.

29.     Plaintiff had never spoken with Bononcini previously but from the very outset of their discussions, Bononcini exhibited discriminatory animus toward Plaintiff, her pregnancy, and her need for medical leave.

30.     For example, when Plaintiff attempted to ask questions about applying for Long Term Disability after her Short Term Disability concluded, Bononcini alluded to the fact that Plaintiff would not be approved for Long Term Disability, even though: (1) she had been approved previously with her first pregnancy; (2) he had no in-depth knowledge of what her medical conditions were; and (3) he would not ultimately make the decision regarding her eligibility for Long Term Disability (as this decision would solely be made by Lincoln Financial Group).

31.     Bononcini even stated in a very hostile manner to Plaintiff at this time that he "couldn't imagine they would approve long term for a pregnancy."

32.     Plaintiff was so offended by Bononcini's discriminatory and retaliatory behavior towards her that on November 3, 2021, she requested that her matter be reassigned to a different individual in HR because of how uncomfortable her interactions with Bononcini made her feel. In her email requesting the same, Plaintiff stated:

> It is quite disappointing your negativity towards workers who go out on disability. Moving forward if there is another Human Resource employee that could be assigned to me instead of you I would prefer that. I don't feel comfortable with you receiving my personal information given your negativity towards my disability.

33.     Plaintiff was eventually approved to take Long Term Disability until April 15, 2022 for her second pregnancy.

34.     Before Plaintiff's Long Term Disability expired, she applied for a 4-week personal leave (to expire on May 15, 2022), which was approved by Defendant University's management without issue or question.

35.     On or about May 5, 2022, Plaintiff had a phone conference with Defendant Behr and Defendant Haney regarding her return to work on May 16, 2022.

36.     During her phone conference with Defendant Behr and Defendant Haney on May 5, 2022, Plaintiff was blindsided and informed for the ***first time*** that she would not be reinstated to her prior seniority on May 16, 2022 when she returned to work from her aforesaid medical leave and that her seniority would start fresh (as a new hire).

37.     Defendant Behr memorialized the aforesaid May 5, 2022 phone conversation in a memorandum sent to Plaintiff on May 5, 2022. This Memorandum confirmed that Plaintiff would be reinstated to her title of University Sergeant but that her seniority would start "fresh" upon returning to work.

38.     Defendant Behr also stated in the May 5, 2022 Memorandum that Plaintiff's employment with Defendant University "ended" when she transition to Long Term Disability but that Defendant University kept her position ***vacant*** (***and therefore did not fill it***) in case Plaintiff decided to return after medical leave.

39.     Defendant University's employee dashboard also showed Plaintiff being terminated from her employment on October 22, 2021 – the day her Short Term Disability ended.

40.     Despite Defendant University's Long Term Disability policy stating that Defendant University is not obligated to keep a staff member's position open beyond 90 days of disability leave, Plaintiff was ***never*** informed by anyone in HR or by Defendant University's

management (prior to May 5, 2022) that Defendant University was not in fact keeping her position open or that her employment with Defendant University would end if she did not return by a certain date (to the contrary Defendants indicated that her position remained vacant and therefore was not filled).

41.     Even in a "Transition Letter" that was sent to Plaintiff by Bononcini on October 24, 2021 (when her FMLA was set to expire), Defendant University failed to mention anything about Plaintiff's employment ending or being terminated (and thus losing her seniority) if she did not return by a certain date.

42.     The only communication that Plaintiff received about the status of her employment as a University Sargent throughout the course of her medical leave and up until May 5, 2022 was from Defendant Behr and Defendant Haney, who consistently reassured Plaintiff that her position was safe and that they would reinstate her once she was able to return.

43.     Plaintiff had several discussions with Defendant Behr and Defendant Haney regarding her employment status, health conditions, and intent to return to work during her aforesaid medical leave (related to her second pregnancy). However, at no point in time, prior to May 5, 2022, did Defendant Behr or Defendant Haney state to Plaintiff that they were considering her position open for others to apply, that they needed to fill her position if she didn't return by a certain date, that her employment had ended or was terminated in October of 2021, or that she would be reinstated as a new hire (without her seniority) upon returning to work.

44.     Plaintiff's understanding regarding her position was memorialized in an email sent to Bononcini on November 3, 2021 in response to his email attaching the aforesaid

Transition Letter, wherein she states: "I had spoken to my boss who stated that the status of my employment is fine. I still have my position."

45.     Prior to commencing medical leave in July of 2021, Plaintiff was ranked third senior Sergeant.

46.     As of May 16, 2022, when Plaintiff returned to work as a "new hire," she lost multiple benefits that she worked long and hard for, including but not limited to:

     i.   The amount of hours she accumulates in vacation time;
    ii.   Priority in days off;
   iii.   Priority/selection in summer vacations;
   iv.   Rank in promotions;
    v.   Mandatory overtime/detail assignment;
   vi.   Priority/selection in preferred shift;
  vii.   Retirement benefits (for which Plaintiff would have become fully vested in January of 2023);
 viii.   Pay increases; and
  ix.   Tuition assistance.[2]

47.     There is absolutely ***no reason*** why Defendant University had to terminate Plaintiff from her position in October of 2021 and strip her of her seniority. In fact, Defendant University could have easily accommodated Plaintiff under the ADA and the PFPO[3], as evidence by the following:

     i.   According to Defendant Behr's May 5, 2022 Memorandum, Defendants did not fill Plaintiff's position and it remained vacant until she returned from medical leave, which clearly shows that it would

---

[2] While Plaintiff was not enrolled in any courses at the time, she would have had to work another five years to get this benefit reinstated.

[3] Under the PFPO, it is unlawful "for an employer to fail to provide reasonable accommodations to an employee for needs related to pregnancy, childbirth, or a related medical condition, provided (i) the employee requests such accommodation and (ii) such accommodations will not cause an undue hardship to the employer." Phila. Code § 9-1128(1). Courts typically apply the same framework used for ADA failure to accommodate claims to PFPO claims. *See Matero v. Chipotle Mexican Grill, Inc.*, No. 17-5529, 2018 U.S. Dist. LEXIS 160716, 2018 WL 4510494, at *1 (E.D. Pa. Sept. 20, 2018).

have faced no undue hardship in holding her position and seniority while on medical leave; and

ii. Defendant University was willing and had the ability to accommodate Plaintiff under similar circumstances in 2019 (wherein she took medical leave for several months but was reinstated to her position with full seniority upon her release to return to work).

48.     Prior to returning to work on May 16, 2022, Plaintiff retained legal counsel, who sent Defendants a letter outlining their discriminatory, retaliatory, and illegal actions under the PFPO, the ADA, Title VII, the PHRA, and the FMLA.

49.     While Defendants never responded to the aforesaid letter sent by Plaintiff's legal counsel, they did subject Plaintiff to significant retaliation, so much so that it became a hostile work environment and her job as a University Sargent completely changed. For example, but not intending to be an exhaustive list:

i. For approximately one month following her return from medical leave, Plaintiff was not given a set schedule – which was extremely challenging for Plaintiff. In fact, Plaintiff would literally have to approach management to see what her schedule was for the next week, as no one would advise her of the same;

ii. Plaintiff was given very minimal assignments and often times sent home because she was not provided with enough work to perform;

iii. Plaintiff was treated as a complete outcast. For example, unlike prior to her medical leave and complaints of discrimination/retaliation, she

was not (1) made to wear a uniform; (2) directly reporting to anyone; and (3) assigned to supervise anyone;

iv.   At one point, Plaintiff was approached by Captain Haney who stated that he received an email indicating that she was leaving her employment with Defendant University on July 29, 2022, even though she never made any representation that she was leaving her employment with Defendant University;

v.   Despite being on day shift prior to medical leave and advising Defendants upon her return from medical leave that she was unable to perform night shift work because of childcare issues, Defendants continued to request that she perform night work;

vi.   Treating Plaintiff as an outcast and isolating her; and

vii.   Treating and speaking to Plaintiff in a rude and condescending manner.

50.   In or about the end of May, 2022, Plaintiff applied for and was interviewed for an open Detective Sergeant position.

51.   On or about June 8, 2022, Plaintiff met with Defendant Behr. During her meeting with Defendant Behr, Plaintiff was informed that she was not selected for the aforesaid Detective Sergeant position. She was further informed that the person who was selected was a Sergeant on night shift and that Plaintiff would be assigned to his position.

52.   Plaintiff informed Defendant Behr during their June 8, 2022 meeting that she already spoke to another Sergeant, who stated that he would take night shift work, so that she did not have to.

53.     Defendant Behr responded by stating that she would speak with the aforesaid Sergeant. However, upon information and belief, Defendant Behr never did anything of the sort and instead sent Plaintiff an email less than a half hour after their conversation stating that she was being permanently assigned to night shift.

54.     This was a clear attempt to force Plaintiff to quit her employment, as:

     i.   Plaintiff already apprised Defendants that she was unable to work night shift due to childcare issues/conflicts; and

    ii.   Defendant Behr also intentionally failed to follow typical practices or policies when filling the aforesaid vacant night shift position. For example:

        1.   It was common practice that when a Sergeant or any other employee of the Public Safety Department is moved permanently to a different shift, he or she is given a 30-day notice. Plaintiff was given four (4) days;

        2.   Furthermore, it was common practice that when a position becomes vacation for a certain class of employees (such as Sergeants or police officers), a memo is sent out to all employees within that class, giving them the opportunity to bid on the shift. No memo was ever sent out regarding the night shift position that Plaintiff was being mandated to work and no

other Sergeant was given the opportunity to bid on the position.[4]

55.     Because Plaintiff could not perform in the position that she was being placed into (night shift Sergeant) and because Defendants' actions were clearly discriminatory and retaliatory, Plaintiff sent an email to Defendant University's HR department, specifically Xavier Johnson (hereinafter "Johnson"), Director of Labor Relations and Equal Employment Opportunity, on June 9, 2023 complaining of discrimination and retaliation against Defendant Behr. Specifically, Plaintiff wrote in part:

> I was informed by Chief Behr that I am being mandated to work night shift to file [sic] the spot of the Sergeant who was promoted. However, I have already told her and other management that I cannot work over night shift due to child care issues. And that I feel being placed on this shift is a form of punishment for me being out on medical issues related to my pregnancy because prior to my medical leave I was assigned to day work 6:30a-4:30p.
>
> …
>
> It is clear that I am not being treated unfairly [sic] and that Chief Behr is trying to push me out and force me to resign. I have been subjected to nothing but negative treatment after returning from medical leave and retaining a lawyer for my discrimination and retaliation claims. This is clear retaliation, and it needs to stop.
>
> Please look into this matter as quickly as possible. . . I don't want to leave my job here at Drexel but it seems management wants me to and is doing everything possible to force me to quit.

56.     On or about June 16, 2020, Plaintiff spoke with Johnson who provided very little assistance, treated her in condescending manner, talked over her, and refused to answer her

---

[4] Notably, on or about June 8, 2022, Chief Behr she sent out a similar memo to patrol officers stating that they had two weeks to inform her if they wanted to move into any of the open patrol officer positions. Therefore, Defendants cannot argue that this common practice did not exist.

questions. Johnson also failed to address any of the concerns expressed by Plaintiff in her June 9, 2022 email.

57.     Following their conversation, Johnson followed up with Plaintiff via email accusing her of being aggressive, over-talking him, and exhibiting an unprofessional tone (among other false accusations). This was an obvious attempt by Defendant University to document Plaintiff in a negative light – presumably to create some type of paper trail. Johnson's aforesaid narrative of their conversation was false and simply another form of retaliation.

58.     Plaintiff's first day scheduled to work night shift was June 22, 2022.

59.     Despite Plaintiff's expressed concerns of retaliation and discrimination and objections raised regarding her ability to work night shift, her reassignment to night shift was not changed, and Plaintiff was expected to report to night shift on a permanent basis starting June 22, 2022.

60.     Therefore, Plaintiff was left with no other choice but to resign from her employment with Defendant University, because she was unable to work night shift on a permanent basis for the reasons discussed *supra* and/ot because of the hostile work environment she was being subjected to.

61.     Thus, Plaintiff was constructively discharged from her employment on June 21, 2022.

62.     Plaintiff submitted her (forced) resignation letter stating as follows:

> Chief Behr,
>
> Please accept this letter as my formal resignation from Drexel University. Since returning from medical leave, I have been subjected to nothing but harassment from you, Captain Haney, and more recently Xavier Johnson from HR. I have been humiliated and made to feel completely isolated by the actions of Drexel's management.

More recently, Xavier Johnson eagerly took his opportunity to document me under a false narrative of what happened during our last communication, which indicated to me that he is not as neutral in this matter as HR is supposed to be. I cannot believe after the years of service I have given to Drexel University, this is how I am being treated and forced to end my career.

As you know, you have mandated me to permanently be on night shift. I informed you multiple times before this mandate and during our conversation on June 8th that I cannot work night shift due to child care issues. I even informed you that there was another Sergeant that was willing to work night shift so that I didn't have to, but you disregarded this completely and permanently assigned me to night shift. Today is Tuesday and I am scheduled back to work tomorrow (working night shift). Again, I cannot work this shift and no one has informed me that my schedule is changing. Therefore, I am left with no other choice but to resign my employment. I didn't want to do this, but you have forced my hand. You have done what it appears you have set out to do since I returned from leave and filed a complaint against Drexel for discrimination and retaliation - which is force me to resign.

I still have personal belongings at the job and would like to know how I can collect those belongings. Please let me know.

Regards,
Chrystina Amelotti

63.     Defendants' actions of (1) terminating Plaintiff's employment in October of 202

(and failing to notify her of the same until May of 2022); (2) taking away and refusing to

reinstate her the seniority, benefits, hours, and job duties that she had prior to commencing

medical leave in July of 2021; (3) subjecting her to a hostile work environment; (4) mandating

that she permanently move to night shift; and (5) constructively discharging Plaintiff are

discriminatory and retaliatory and clear violations of Title VII/PDA, the ADA, PFPO and the

FMLA.

**Count I**
**Violations of Title VII/PDA**
**([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment)**
**-Against Defendant University-**

64.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65.     Based on the foregoing, Plaintiff believes and therefore avers that she was subjected to a discriminatory hostile work environment base on her pregnancy/pregnancy complications, by *inter alia*: (1) terminating her employment in October of 2021 (which she was not notified of until May 5, 2022); (2) treating her in a rude and demeaning manner; (3) taking away and refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in July of 2021; (4) treating her in a disparate manner as compared to her other colleagues; (5) mandating that she work night shift; (6) ignoring her concerns of discrimination/retaliation under Title VII/PDA; (7) painting her in a false and negative light; and (8) constructively discharging her employment.

66.     Plaintiff believes and therefore avers that she was also subjected to a retaliatory hostile work environment following her complaints of discrimination/retaliation under Title VII, by *inter alia*: (1) treating her in a rude and demeaning manner; (2) refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in July of 2021; (3) treating her in a disparate manner as compared to her other colleagues; (4) mandating that she work night shift; (5) ignoring her concerns of discrimination/retaliation under Title VII/PDA; (6) painting her in a false and negative light; and (7) constructively discharging her employment.

67.     Plaintiff's pregnancy and pregnancy-related complications were motivating and/or determinative factors in Defendant University's actions of (1) terminating Plaintiff's

employment in October of 2021 (and failing to notify her of the same until May of 2022); (2) taking away and refusing to reinstate her the seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that she permanently move to night shift; and (4) constructively discharging Plaintiff.

68.     Defendant University's actions of (1) terminating Plaintiff's employment in October of 2021 (and failing to notify her of the same until May of 2022); (2) refusing to reinstate Plaintiff's seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that Plaintiff permanently move to night shift; and/or (4) constructively discharging Plaintiff, were taking in retaliation for engaging in protected activity under Title VII.

69.     These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII/PDA.

### Count II
### Violations of the PFPO
### ([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment; [4] Failure to Accommodate)
### -Against All Defendants-

70.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71.     Based on the foregoing, Plaintiff believes and therefore avers that she was subjected to a discriminatory hostile work environment based on her pregnancy, pregnancy complications, and/or pregnancy-related accommodations under the PFPO by *inter alia*: (1) terminating her employment in October of 2021 (which she was not notified of until May 5, 2022); (2) treating her in a rude and demeaning manner; (3) taking away and refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in July of 2021; (4) treating her in a disparate manner as compared to her other colleagues;

(5) mandating that she work night shift; (6) ignoring her concerns of discrimination/retaliation under the PFPO; (7) painting her in a false and negative light; and (8) constructively discharging her employment.

72.     Based on the foregoing, Plaintiff believes and therefore avers that she was subject to a retaliatory hostile work environment because of her complaints of discrimination/retaliation under the PFPO by *inter alia*: (1) treating her in a rude and demeaning manner; (2) refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in July of 2021; (3) treating her in a disparate manner as compared to her other colleagues; (4) mandating that she work night shift; (5) ignoring her concerns of discrimination/retaliation under the PFPO; (6) painting her in a false and negative light; and (7) constructively discharging her employment.

73.     Plaintiff's pregnancy/pregnancy-related complications were motivating and/or determinative factors in Defendants' actions of (1) terminating her employment in October of 2021 (for which she was not notified of until May 5, 2022); (2) taking away and refusing to reinstate the seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that she permanently move to night shift; and (4) constructively discharging Plaintiff.

74.     Defendants' actions of (1) terminating Plaintiff's employment in October of 2021 (for which she was not notified of until May 5, 2021); (2) taking away and refusing to reinstate the seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that Plaintiff permanently move to night shift; and/or (4) constructively discharging Plaintiff, were taking in retaliation for engaging in protected activity under the PFPO.

75.     Plaintiff also believes and therefore avers that Defendants failed to accommodate her pregnancy and/or pregnancy-related complications by terminating her employment while on medical leave and then refusing to reinstate her to the same position she had (with the same seniority, benefits, hours, and job duties) prior to commencing medical leave in July of 2021.

76.     These actions as aforesaid constitute unlawful discrimination and retaliation under the PFPO.

77.     Defendant Behr and Defendant Haney are personally liable because they aided, abetted, and personally participated in the discriminatory and retaliatory actions asserted herein.

**Count III**
**Violations of the ADA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Failure to Accommodate; [4] Hostile Work Environment)**
**-Against Defendant University Only-**

78.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79.     Based on the foregoing, Plaintiff believes and therefore avers that she was subjected to a discriminatory hostile work environment because of her actual/perceived/record of disabilities and/or because of her requested accommodations, by *inter alia*: (1) terminating her employment in October of 2021 (which she was not notified of until May 5, 2022); (2) treating her in a rude and demeaning manner; (3) taking away and refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in July of 2021; (4) treating her in a disparate manner as compared to her other colleagues; (5) mandating that she work night shift; (6) ignoring her concerns of discrimination/retaliation under the ADA; (7) painting her in a false and negative light; and (8) constructively discharging her employment.

80.     Plaintiff believes and therefore avers that she was also subjected to a retaliatory hostile work environment following her complaints of discrimination/retaliation under the ADA, by *inter alia*: (1) treating her in a rude and demeaning manner; (2) refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in July of 2021; (3) treating her in a disparate manner as compared to her other colleagues; (4) mandating that she work night shift; (5) ignoring her concerns of discrimination/retaliation under the ADA; (6) painting her in a false and negative light; and (7) constructively discharging her employment.

81.     Plaintiff's actual, perceived, and/or record of disabilities were motivating and/or determinative factors in Defendant University's actions of (1) terminating her employment in October of 2021 (for which she was not notified of until May 5, 2022); (2) taking away and refusing to reinstate the seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that she permanently move to night shift; and (4) constructively discharging Plaintiff.

82.     Defendant University's actions of (1) terminating Plaintiff's employment in October of 2021 (for which she was not notified of until May 5, 2021); (2) taking away and refusing to reinstate the seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that Plaintiff permanently move to night shift; and/or (4) constructively discharging Plaintiff, were taking in retaliation for engaging in protected activity under the ADA.

83.     Plaintiff also believes and therefore avers that Defendants failed to accommodate her disabilities by terminating her employment while on medical leave and then refusing to

reinstate Plaintiff to the same position she had (with the same seniority, benefits, hours, and job duties) prior to commencing medical leave in July of 2021.

84.     These actions as aforesaid constitute unlawful discrimination and retaliation under the ADA.

**Count IV**
**Violations of the PFPO**
**([1] Actual/Perceived/Record of Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; [4] Failure to Accommodate)**
**-Against All Defendants-**

85.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86.     Based on the foregoing, Plaintiff believes and therefore avers that she was subjected to a discriminatory hostile work environment based on her actual, perceived, record of disabilities, requests for accommodations, and/or complaints of discrimination/retaliation under the PFPO by *inter alia*: (1) terminating her employment in October of 2021 (which she was not notified of until May 5, 2022); (2) treating her in a rude and demeaning manner; (3) taking away and refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in July of 2021; (4) treating her in a disparate manner as compared to her other colleagues; (5) mandating that she work night shift; (6) ignoring her concerns of discrimination/retaliation under the PFPO; (7) painting her in a false and negative light; and (8) constructively discharging her employment.

87.     Based on the foregoing, Plaintiff believes and therefore avers that she was subject to a retaliatory hostile work environment because of her complaints of discrimination/retaliation under the PFPO by (1) treating her in a rude and demeaning manner; (2) refusing to reinstate her seniority, job duties, hours and other benefits that she had prior to commencing medical leave in

July of 2021; (3) treating her in a disparate manner as compared to her other colleagues; (4) mandating that she work night shift; (5) ignoring her concerns of discrimination/retaliation under the PFPO; (6) painting her in a false and negative light; and (7) constructively discharging her employment.

88.     Plaintiff's actual, perceived, and/or record of disabilities were motivating and/or determinative factors in Defendant University's actions of (1) terminating her employment in October of 2021 (for which she was not notified of until May 5, 2022); (2) taking away and refusing to reinstate the seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that she permanently move to night shift; and (4) constructively discharging Plaintiff.

89.     Defendant University's actions of (1) terminating Plaintiff's employment in October of 2021 (for which she was not notified of until May 5, 2021); (2) taking away and refusing to reinstate the seniority, benefits, hours, and job duties that she had prior to commencing medical leave in July of 2021; (3) mandating that Plaintiff permanently move to night shift; and/or (4) constructively discharging Plaintiff, were taking in retaliation for engaging in protected activity under the PFPO.

90.     Plaintiff also believes and therefore avers that Defendants failed to accommodate her disabilities by terminating her employment while on medical leave and then refusing to reinstate Plaintiff to the same position she had (with the same seniority, benefits, hours, and job duties) prior to commencing medical leave in July of 2021.

91.     These actions as aforesaid constitute unlawful discrimination and retaliation under the PFPO.

92.     Defendant Behr and Defendant Haney are personally liable because they aided, abetted, and personally participated in the discriminatory and retaliatory actions asserted herein.

**Count V**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Retaliation)**
**-Against All Defendants-**

93.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

94.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

95.     Plaintiff requested leave from Defendant University, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

96.     Plaintiff had at least 1,250 hours of service with the Defendant University during her last full year of employment (pre-FMLA leave request).

97.     Defendant University is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

98.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of FMLA.

99.     Defendant University took the following actions in retaliation for Plaintiff's request and/or utilization of FMLA leave: (1) terminating Plaintiff's employment in October of 2021; (2) failing to notify Plaintiff of her October, 2021 termination (before May 5, 2022), (3) taking away and refusing to reinstate Plaintiff's seniority, benefits, hours, and job duties that she

had prior to commencing medical leave in July of 2021; (4) subjecting her to a hostile work environment; (5) mandating that Plaintiff permanently move to night shift; and/or (6) constructively discharging Plaintiff.

100.    These actions as aforesaid constitute retaliation violations of the FMLA.

101.    Defendant Behr and Defendant Haney are personally liable because they aided, abetted, and personally participated in the retaliatory actions asserted herein.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation, interference or discrimination at the hands of Defendants until the date of verdict;

B.    Plaintiff is to be awarded liquidated/punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.    Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:   _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 28, 2023

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

CIVIL ACTION

Chrystina Amelotti

v.

NO.

Drexel University o/a Department of Public Safety, et al.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X )

| | | |
|---|---|---|
| 3/29/2023 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___531 Swarthmore Avenue, Folsom, PA 19033_____

Address of Defendant: __3201 Arch Street, Suite 430, Philadelphia, PA 19104_____

Place of Accident, Incident or Transaction: __Defendants place of business_____

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year     Yes ☐     No ☒
    previously terminated action in this court?

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit     Yes ☐     No ☒
    pending or within one year previously terminated action in this court?

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier     Yes ☐     No ☒
    numbered case pending or within one year previously terminated action of this court?

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights     Yes ☐     No ☒
    case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __3/29/2023_____     _____     ___ARK2484 / 91538___
                                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.  Federal Question Cases:**

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☒ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10.  Social Security Review Cases
☐ 11.  All other Federal Question Cases
         *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
         *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf_____, counsel of record *or* pro se plaintiff, do hereby certify:

☒  Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case
    exceed the sum of $150,000.00 exclusive of interest and costs:

☐  Relief other than monetary damages is sought.

DATE: __3/29/2023_____     _____     ___ARK2484 / 91538___
                                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

AMELOTTI, CHRYSTINA

**(b)** County of Residence of First Listed Plaintiff    Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

DREXEL UNIVERSITY O/A DEPARTMENT OF PUBLIC SAFETY, ET AL.

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|   |   |   |   |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | **X** 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | **X** 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| **X** 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII (42USC2000); ADA (42USC12101); FMLA (29USC2601)
Brief description of cause:
Violations of the TITLE VII, ADA, FMLA, PFPO and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   **X** Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                    DOCKET NUMBER

DATE    3/29/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

Print            Save As...            Reset